UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI STOVER-DAVIS, | Case No. 1:15-cv-1938-BAM |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION |
| AETNA LIFE INSURANCE COMPANY, California corporation, and DOES 1-100, inclusive, | |
| Defendant. | |

**INTRODUCTION**

Before the Court is Defendant AETNA Life Insurance Policy's ("Defendant" or "Aetna") Motion to Compel Arbitration. (Doc. 10).[1] Plaintiff Lori Stover-Davis ("Plaintiff") filed an opposition to the motion on April 7, 2016, to which Defendant filed a reply on April 15, 2016. (Docs. 14, 20).[2] The Court also permitted Plaintiff an opportunity to file a surreply addressing the new evidence submitted in support of Defendant's reply brief which Plaintiff filed on May 3, 2016. (Docs. 22, 23, 24). The Court deemed the motion suitable for decision without oral argument and vacated the hearing scheduled for April 22, 2016. (Doc. 20). Having considered

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), the parties consented to have a United States Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment. (Docs. 7, 8).

[2] Plaintiff's first opposition (Doc. 14) was submitted in error as it omitted several pages. After realizing her omissions, Plaintiff filed the amended opposition on April 18, 2016. (Doc. 20). For clarity, the Court will refer to the amended document as the operative opposition for the purposes of this order.

1

the moving, opposition, reply papers, and the entire file, Defendant's motion to compel arbitration is GRANTED.

**BACKGROUND**

Plaintiff alleges the following facts. Plaintiff is a former employee of Defendant Aetna Life Insurance Company. Plaintiff began her employment with Defendant on June 26, 2012, as a Leave and Disability Specialist. On or around September 17, 2013, Plaintiff fell at work suffering a fractured hip. After returning to work from her medical leave, Plaintiff alleges that Defendant failed to adequately accommodate her disability. Plaintiff was later terminated on September 24, 2015, for which Plaintiff brings the underlying suit.

On March 15, 2016, Defendant filed the present motion to compel arbitration of Plaintiff's claims pursuant to "Aetna's Employment Dispute Arbitration Program." Aetna asserts that, upon hire, Plaintiff was provided a copy of the company's Employee Handbook. *See* Declaration of Roberta Michaels ("Michaels Decl.,"), ¶ 6, 9, Doc. 19-1. The Employee Handbook contains an arbitration policy provision ("Agreement") that provides that "all employment-related legal disputes between employees and the Company will be submitted to and resolved by binding arbitration and neither the employee nor the company will file or participate as an individual party or member of a class in a lawsuit in any court against the other with respect to such matters." (Doc. 10 at 2). As further set forth in the Agreement, arbitration is not a mandatory condition of employment as an employee may decline to participate in the Agreement, provided the employee completes an Election Not to Participate form within thirty days of employment. *See* Declaration of Suzanna K. Yeghiazarians ("Yeghiazarians Decl.,") Doc. 10-1 at ¶ 3, Exh. B. Aetna alleges that Plaintiff did not revoke her acceptance of the Agreement within the 30-day period, nor did she attempt to do so at any time thereafter. Michaels Decl. at ¶¶ 4-8 and Exhibits B, C, D, E.

Despite allegedly acknowledging the agreement and failing to file an opt-out form, Plaintiff initiated the instant action in Fresno County Superior Court on November 19, 2015. She asserts the following claims against Aetna: (1) wrongful termination, (2) disability discrimination, (3) failure to accommodate, (4) failure to engage in the interactive process, (5) failure to prevent discrimination, (6) retaliation; and (7) infliction of emotional distress. Aetna removed the case to

this Court on December 30, 2015. The instant motion followed.

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") permits a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition a district court for an order compelling arbitration. 9 U.S.C. § 4. The FAA created a "strong federal policy favoring arbitral dispute resolution," *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999), and courts have been directed to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). As a result, the party seeking to avoid arbitration under the FAA bears the burden of proving that the claims are unsuitable for arbitration. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000). When deciding whether to compel arbitration, the court's sole role is "determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Arbitration agreements are to be placed on an "equal footing with other contracts." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Thus, written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Under the FAA, general state contract law applies to determine whether an agreement to arbitrate is valid and enforceable." *See e.g.*, *Raymundo v. ACS State & Local Sols., Inc.*, 2013 U.S. Dist. LEXIS 70141, 2013 WL 2153691, at *2 (N.D. Cal. May 16, 2013).

When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party. *See Chavez v. Bank of Am.,* 2011 U.S. Dist. LEXIS 116630, 2011 WL 4712204, at * 3 (N.D. Cal. Oct. 7, 2011).

**ANALYSIS**

Defendant moves to compel arbitration on the grounds that Plaintiff agreed to arbitration when she signed the Employee Handbook acknowledgment and failed to return the opt-out form. Plaintiff responds that Defendant fails to set forth admissible evidence that she voluntarily signed

3

the arbitration agreement and that she never received the opt-out form. Plaintiff also contends that the arbitration agreement is procedurally and substantively unconscionable.

**A.    The Parties Entered Into an Enforceable Arbitration Agreement**

   **1.    Admissible Evidence**

Defendant's motion includes declarations by Roberta Michaels, Human Resources Compliance Manager, and Beverly Proulx, an Aetna Recruiter familiar with hiring practices and acquisition of new employees. *See* Declaration of Lori Stover-Davis ("Stover-Davis Decl.,") Doc. 15; *See* Declaration of Beverly Proulx ("Proulx Decl.,"), Exh. A, Doc. 19-3.  Plaintiff objects to many of the statements in these declarations arguing that the declarants were not present during her new hire orientation and therefore their statements lack foundation and authentication, amount to inadmissible hearsay, and include testimony for which the declarants lack personal knowledge. (Docs. 17, 24).

"On a motion to compel arbitration, the court applies a standard similar to the summary judgment standard applied under Rule 56 of the Federal Rules of Civil Procedure." *Alvarez v. T-Mobile USA, Inc*., No. CIV. 2:10-2373 WBS GGH, 2011 U.S. Dist. LEXIS 146757, at *8, 2011 WL 6702424 (E.D. Cal. Dec. 21, 2011). Under Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added). Consequently, the focus of an objection at the summary judgment stage is not "the admissibility of the evidence's form" but on the "admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). In consideration of the applicable standard, "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are unnecessary. *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. June 5, 2006). "Instead of challenging the admissibility of this evidence, lawyers should challenge its sufficiency." *Id.*

Moreover, objections to documentary evidence "on the basis of a failure to comply with the technicalities of authentication requirements or the best evidence rule are . . . inappropriate"

so long as such documents could be properly authenticated at trial. *Alvarez,* 2011 WL 6702424 at *10-11.

The Court has reviewed Plaintiff's objections and finds them superfluous to the legal standard for the reasons explained. Accordingly, they are each overruled.

**2. Agreement to Arbitrate**

The first task of a Court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute. *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988). Whether the parties in this case entered into an arbitration agreement will be determined under California contract law. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002). Under California contract law, a valid contract exists only if the parties consent. *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999). The petitioning party bears the initial burden of proving by a preponderance of evidence: (1) the existence of a valid arbitration agreement and (2) that the dispute is covered by the agreement. *See Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 972, 64 Cal. Rptr. 2d 843, 938 P.2d 903 (1997). "[T]he trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the Court's discretion, to reach a final determination." *Id.* at 972.

Plaintiff challenges the arbitration agreement arguing that there is insufficient evidence to find that a valid contract exists. Plaintiff explains that while she signed the Employee Handbook acknowledgment, she never "specifically signed an arbitration agreement" and no one "told [her] that the Employee Handbook contained an Arbitration Agreement." Stover-Davis Decl. ¶ 4, 5. Plaintiff further argues that she does not remember seeing or being provided with a form allowing her to elect out of Arbitration. Stover-Davis Decl. ¶ 5, 7.

The Court is unpersuaded for several reasons. First, to the extent that Plaintiff argues that she was required to sign the physical arbitration agreement for it to be enforceable; Plaintiff is wrong. Plaintiff consented to the arbitration agreement when she signed the acknowledgment of her receipt of the Employee Handbook. Although Plaintiff did not "specifically sign" the arbitration agreement itself, under California contract law, a non-signatory party may be subject

5

to an arbitration agreement if her subsequent conduct indicates that she has assumed the obligation to arbitrate. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002).

The weight of authority supports the Court's conclusion. In *Najd*, the employer instituted a voluntary binding arbitration program to which the employee was bound unless he submitted a form opting out of the program. *Id*. at 1106. The Ninth Circuit held that Najd had consented to the agreement to arbitrate by reasoning that "where the import of Najd's silence was as apparent as if he signed his consent, we may infer assent." *Najd*, 294 F.3d at 1109. The Court inferred consent because Najd had signed an acknowledgement form that described how to opt out, and because Najd had a reasonable amount of time (30 days) to decide whether to opt out. *Id.* The Court also noted that "Circuit City communicated in detail and in writing the effect of Najd's acceptance on his right to bring claims against his employer," and that "Circuit City made clear that opting out of the agreement would have no effect on the employment relationship." *Id.* at 1109. Accordingly, the court held that Najd's failure to opt out of arbitration was "indistinguishable from overt acceptance...." *Id.*

In *Gentry v. Superior Court*, the California Supreme Court also found that an employee consented to an arbitration agreement under similar circumstances. 42 Cal.4th 443, 468, 64 Cal. Rptr. 3d 773, 165 P.3d 556 (2007), *abrogated on other grounds* in *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1746, 179 L.Ed.2d 742 (2011). The plaintiff in *Gentry* signed a similar acknowledgment form that indicated that if he wished to opt out of arbitration, he must send in an opt-out form within 30 days. The Court wrote that "[t]he question is not whether the acknowledgment form itself is a contract—it is not—but rather whether Gentry's signature on that form reasonably led Circuit City to believe that his failure to opt out constituted acceptance of the arbitration agreement." *Id.* The Court held that "in signing the [acknowledgment] form, Gentry manifested his intent to use his silence, or failure to opt out, as a means of accepting the arbitration agreement. Having indicated his intent, he may not now claim that the failure to opt out did not constitute acceptance of the arbitration agreement." *Id.*

District courts, including at least one court in this District, have also applied the reasoning of *Najd* and *Gentry* to bind employees to arbitration agreement's referenced in employee

handbooks. *See Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011); *Burnett v. Macy's West Stores, Inc.*, No. 11-1277, 2011 U.S. Dist. LEXIS 116479, 2011 WL 4770614, at *3 (E.D. Cal. Oct. 7, 2011). The circumstances here similarly permit the Court to infer that Plaintiff consented to Aetna's arbitration policy when she signed the acknowledgment of the Employee Handbook on June 25, 2012. Additionally, Plaintiff had thirty days to decide whether or not to opt out, which is the same amount of time provided to the Plaintiffs in *Najd* and *Gentry*. Plaintiff did not submit an Election Form within 30 days, despite acknowledging her duty to do so if she wished to opt out of arbitration. Michaels Decl. ¶¶ 4-8. Accordingly, the Court finds that Plaintiff's signature on the Acknowledgment form "reasonably led [Defendant] to believe that [her] failure to opt out constituted acceptance of the arbitration agreement," *Gentry*, 42 Cal.4th at 468, and that her failure to opt out of arbitration was "indistinguishable from overt acceptance." *Najd*, 294 F.3d at 1109.

Second, contrary to Plaintiff's contention otherwise, the evidence shows that Plaintiff electronically agreed to binding arbitration agreement through electronic means. (Doc. 20 at 5). California's Uniform Electronic Transactions Act ("UETA") provides that "[w]hether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." Cal. Civ. Code § 1633.5. At the start of her employment, Plaintiff was required to complete new hire paperwork online. Michaels Decl. at ¶ 4. Plaintiff was issued unique Employee ID number A592442 which she used to create a genuine password. Plaintiff's individual ID and password were then used to access Aetna's online e-service website ("e-service") in order to complete required online orientation paperwork and review company policies and documents. Michaels Decl. at ¶ 4. Plaintiff's electronic signature, through e-service, could only be placed using Plaintiff's specific Aetna ID and password. Indeed, Plaintiff logged into the e-service system using her password and Aetna ID and acknowledged that she reviewed Aetna's arbitration program and the electronic opt-out form. Michaels Decl. at Exh F. Therefore, to the extent that Plaintiff argues that Defendant fails to demonstrate that her electronic signature "was the act of Plaintiff," the argument is not convincing.

Finally, while the Court has taken Plaintiff's assertions into account including that she "was unaware that the Employee Handbook" contained an Arbitration Agreement and that she does "not recall seeing or being provided with any form allowing [her] to elect to opt of arbitration," under California law, Plaintiff cannot avoid the terms of the contract by asserting that she failed to read it before signing. *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1198 (N.D. Cal. 2015). Further, a preponderance of the evidence supports the conclusion that Plaintiff electronically signed the acknowledgement of the Arbitration Agreement. *See Rosas v. Macy's*, 2012 U.S. Dist. LEXIS 121400, 2012 WL 3656274 (C.D. Cal., Aug 24, 2012) (electronic signature enforceable despite plaintiff's statement that she does not recall signing the document); *Cortez v. Ross Dress for Less, Inc.*, 2014 U.S. Dist. LEXIS 50569, 2014 WL 1401869 (C.D. Cal. Apr. 10, 2014) (rejecting Plaintiffs' argument that they do not recall signing arbitration agreement where Plaintiffs' electronically signed the arbitration policy using a user created unique password

Regardless of whether Plaintiff recalls agreeing to the Arbitration Agreement in the Employee Handbook, the Court finds that Defendant has met its burden of establishing, by a preponderance of evidence, that a valid agreement to arbitrate exists between the parties.

**B.     Illusoriness**

Next, Plaintiff argues that the Agreement is "illusory" and therefore unenforceable because the acknowledgment form of the Employee Handbook states that Aetna maintains the right to unilaterally change the arbitration agreement without notice. Specifically, Plaintiff argues, paragraph two states "[a]ny modifications of this agreement must be in writing and must be signed by the Chairman of Aetna of the Senior Vice President, Aetna Human Resources, or his or her designee." (Doc. 16-4 at 3). Plaintiff argues that the modification provision is illusory based on California Court of Appeal precedent in *Peleg v. Neiman Marcus Group, Inc*., 204 Cal. App. 4th 1425, 1447 (Cal. App. 2d Dist. 2012) (applying Texas law to conclude that the employers unilateral ability to modify the arbitration agreement was illusory).

Looking to the terms of Defendant's arbitration procedures, the agreement appears to be bilateral, or at least not so one-sided as to be construed as unilateral.  The arbitration procedures provide, in part:

> The Company may modify or eliminate this program. However, with respect to an employee or former employee who has agreed to be bound by the terms of this program, the Company may only modify or eliminate the program with that individual's consent (or as required by law).

Yeghiazarians Decl. at Exh. A, pg. 5.

The arbitration provision here is far more bilateral than the agreement found illusory in *Peleg*. In *Peleg*, an employee claimed the arbitration agreement he signed was illusory because the store retained the unilateral right to amend, modify or revoke the agreement on 30 days' advance written notice, with the change to apply to any unfiled claim, including those that had accrued. *Id.* at 1437. The appellate court observed that had the agreement to arbitrate simply authorized the defendant to make unilateral modifications, it would not be illusory under California law because the implied covenant of good faith and fair dealing would preclude any change that undermined the employee's rights. *Id.* at 1465–1466. However, because the agreement at issue in *Peleg* specifically allowed retroactive modifications, the Court held the agreement to arbitrate was illusory and invalid under California law. *Id.* at 1464–1465.

By its terms, Aetna may only modify the arbitration provisions with respect to Plaintiff, with Plaintiff's consent. Therefore, Aetna does not retain the unilateral right to modify or terminate the arbitration provision. The Court is satisfied that requiring Defendant to obtain Plaintiff's consent prior to altering their arbitration agreement affords Plaintiff and other similarly situated employees sufficient protection against inequitable assertions of power.

Furthermore, several Courts have rejected Plaintiff's argument that a unilateral modification provision is *per se* illusory. For example, the Court of Appeal rejected a similar argument in *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1214, 78 Cal. Rptr. 2d 533 (1998). There, the employee argued that the arbitration agreement was lacking in mutuality and was unenforceable because the employer reserved "the right to change any provision in this Handbook at any time for any reason without advance notice" *Id.* at 1213. The court of appeal held that the employee entered into a valid and enforceable agreement to arbitrate any disputes arising from her employment with Nautilus, reasoning that "Nautilus's discretionary power to modify the terms of the personnel handbook in writing [sic] notice indisputably carries

with it the duty to exercise that right fairly and in good faith. So construed, the modification provision does not render the contract illusory." *Id.* at 1214 (citation omitted).

In *Serpa v. California Surety Investigations, Inc.,* 215 Cal. App. 4th 695, 706, 155 Cal. Rptr. 3d 506 (2013), the court held that "the implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify [an] arbitration agreement and saves that agreement from being illusory and thus unconscionable." *Accord, e.g., Martinez v. Scott Specialty Gases, Inc.*, 83 Cal. App. 4th 1236, 1246, 100 Cal. Rptr. 2d 403 (2000) ("[A]n employer's reservation of the right to modify does not render the contract unenforceable as unconscionable, illusory, or lacking in mutuality of obligation. . . .").

Therefore, even if Aetna maintained the ability to modify the agreement without Plaintiff's consent, the Court cannot say that Defendant's ability to modify the terms of the Employee Handbook renders the arbitration agreement illusory or unilateral so as to be unenforceable. *See McIntosh v. Adventist Health/West St. Hosp.*, 2013 U.S. Dist. LEXIS 34328 (N.D. Cal. Mar. 12, 2013). Accordingly, the Court disagrees with Plaintiff and finds that Aetna's arbitration agreement is not illusory.

**C.     Unconscionability**

Alternatively, Plaintiff contends that, even if she did agree to participate in arbitration, the agreement is unconscionable under California contract law and is therefore unenforceable on the grounds that (1) Defendant failed to attach the rules of the Arbitration Association of America ("AAA") and (2) the contract unreasonably limits Plaintiff's right to discovery. (Doc. 20 at 8-14).

**1.     Procedural Unconscionability**

"To determine whether [an] arbitration agreement is procedurally unconscionable, the Court must examine 'the manner in which the contract was negotiated and the circumstances of the parties at that time." *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1171 (9th Cir. Cal. 2003) (*quoting Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999)). Procedural unconscionability is present where the contract is the product of either oppression or surprise. A contract is oppressive if an inequality of bargaining power between the parties

1   precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the
2   terms of the contract. Surprise involves the extent to which the supposedly agreed-upon terms of
3   the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the
4   disputed terms. *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532, 60 Cal. Rptr. 2d 138
5   (1997)).

6   Here, Plaintiff complains that the Arbitration Agreement was oppressive because she was
7   "rushed to click all of the boxes by personnel" and was thus denied the ability to know exactly
8   what she was signing or its ramifications. Stover-Davis Decl. at ¶ 5. She declares that, had she
9   known that by signing the form she would be giving up her right to have employment-related
10  claims heard in court, she would not have signed it. Stover-Davis Decl. at ¶ 5.

11  The Court's review of the Arbitration Agreement and the new hire orientation paperwork
12  does not support a determination that the arbitration provisions were hidden or that there was any
13  surprise about the terms. The online orientation contains checkboxes designating the subject area
14  of each topic of information.  In the list of topics is a separate and distinct section for arbitration
15  procedures that includes two subheadings: "Read the Arbitration Provision" and "Elect Not to
16  Participate (Optional)." Michaels Decl. at ¶¶ 4-8 and Exhibits B, C, D, E.   Plaintiff is familiar
17  with arbitration agreements generally and she states as much in her declaration by providing that
18  had she known that she was signing an arbitration agreement she never would have signed it.  The
19  Court cannot say that even if Plaintiff were rushed through orientation that she was unable to
20  notice the three headings with related checkboxes referring to Aetna's arbitration agreement.
21  Moreover, these allegations alone do not demonstrate that the circumstances of the signing were
22  unconscionable. The terms of the arbitration clause were as conspicuous as all of the other terms
23  and "being rushed" is not the equivalent to being tricked. *See Veliz v. Cintas Corp*., 2004 U.S.
24  Dist. LEXIS 32208, 2004 WL 2452851, *94 (N.D. Cal. Apr. 5, 2004).

25  Further, even if Plaintiff argues she was rushed to sign the Employee Handbook
26  Acknowledgment, Plaintiff cannot genuinely claim she was "surprised" by the arbitration
27  agreement. On June 11, 2012, prior to the commencement of her employment with Aetna,
28  Beverly Proulx, an Aetna Recruiter, provided Plaintiff with an employment offer letter. See

11

1  Declaration of Beverly Proulx ("Proulx Decl.,") Doc. 19-3 at ¶ 3, Exh. A. The offer letter gave
2  notice to Plaintiff of the subject arbitration agreement. Further, the offer letter expressly provided
3  the arbitration program will apply to Plaintiff's employment with Aetna unless Plaintiff
4  completes an Election Not To Participate form. The subject letter enclosed: (1) a copy of Aetna's
5  Employment Dispute Arbitration Program, (2) Questions and Answers about the Employment
6  Dispute Arbitration Program, and (3) a copy of the Election Not To Participate form. Proulx Decl.
7  at ¶ 3, Exh. A.  Plaintiff cannot and does not argue that she was rushed in her review of her offer
8  letter. The arbitration provision is therefore not rendered invalid by procedural unconscionability
9  on these grounds.

10  Plaintiff also contends that the arbitration agreement is procedurally unconscionable
11  because Aetna did not provide her with a copy of the AAA rules.  However, the "failure to attach
12  AAA rules, standing alone, is an insufficient ground to support a finding of procedural
13  unconscionability." *Lane v. Francis Capital Management LLC*, 224 Cal.App.4th 676, 689-90
14  (2014), *citing Peng v. First Republic Bank*, 29 Cal.App.4th 1462, 1472 (2013). As in *Lane*, the
15  arbitration rules referenced in the agreement were easily accessible to Plaintiff on the internet.
16  Further, numerous courts have concluded that incorporation of the AAA rules by reference into
17  an otherwise valid arbitration agreement does not render such an agreement procedurally
18  unconscionable.  That Plaintiff was not given a copy of the AAA rules does not render the
19  arbitration agreement unenforceable. *See, e.g., Collins v. Diamond Pet Food Processors of Cal.*,
20  2013 U.S. Dist. LEXIS 60173, 2013 WL 1791926 (E.D. Cal. Apr. 25, 2013); *Miguel v.*
21  *JPMorgan Chase Bank, N.A.*, 2013 U.S. Dist. LEXIS 16865, 2013 WL 452418, at *6 (C.D. Cal.
22  Feb. 5, 2013); *Ulbrich v. Overstock.Com, Inc.*, 887 F. Supp. 2d 924, 932-33 (N.D. Cal. 2012);
23  *Swarbrick v. Umpqua Bank*, 2008 U.S. Dist. LEXIS 73678, 2008 WL 3166016, at *3-5 (E.D. Cal.
24  Aug. 5, 2008).  The Court therefore disagrees that Defendant's failure to provide Plaintiff with a
25  copy of the AAA rules renders the arbitration agreement procedurally unconscionable.

26  **2.    Substantive Unconscionability**

27  Finally, Plaintiff contends the arbitration agreement is substantively unconscionable
28  because it allegedly limits her ability to conduct discovery—arguing it does not provide for

Requests for Admission and only a limited documents production. (Doc. 20 at 9-10). The discovery provisions of the agreement allows for depositions, one set of interrogatories, and a request for production of documents on which the other party relies in support of its interrogatory answers. It further provides additional discovery may be sought upon a showing that it is necessary. Plaintiff argues that these limits on discovery run afoul of the standards set in *Armendariz v. Foundation Health Psychcare Servs.*, 24 Cal. 4th 83, 99, 99 Cal. Rptr. 2d 745, 6 P.3d 669 (2000), where the California Supreme Court set certain minimum standards for arbitration agreements. Under *Armendariz*, an arbitration agreement in this context is only valid if it:

> (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.

*Armendariz*, 24 Cal.4th at 102 (*citing Cole v. Burns Int'l Sec. Servs*., 105 F.3d 1465, 1482, 323 U.S. App. D.C. 133 (D.C. Cir. 1997)).

Plaintiff cites *Fitz v. NCR Corp* where the California Court of Appeal applied *Armendariz* in finding an arbitration agreement's discovery limitations substantively unconscionable. 118 Cal. App. 4th 702, 715-19, 13 Cal. Rptr. 3d 88 (2004). The Court described these limitations as follows:

> The ACT policy limits discovery to the sworn deposition statements of two individuals and any expert witnesses expected to testify at the arbitration hearing. The policy also requires all exhibits and a list of potential witnesses to be exchanged at least two weeks in advance of the arbitration hearing. No other discovery is allowed unless the arbitrator finds a compelling need to allow it. The policy requires the arbitrator to limit discovery as specified in the agreement unless the parties can demonstrate that a fair hearing would be impossible without additional discovery.

*Fitz* is distinguishable. Here, the arbitration provision lowers the bar to discovery and imposes a lesser burden than the showing required in *Fitz*. Aetna's arbitration provision requires that discovery merely be "necessary" rather than the parties demonstrate a "compelling need" to justify additional discovery beyond the default rule of one deposition and expert depositions of designated experts. This provision therefore does not eliminate a right to discovery that Plaintiff would have in Court as it allows parties to seek additional discovery through an order by the

13

1  arbitrator upon a showing of good cause.

2  Additionally, Defendant points to other cases which hold that limitations on discovery do
3  not render an arbitration provision unconscionable. *See e.g.*, *Dotson v. Amgen, Inc*. 181
4  Cal.App.4th 975, 104 Cal. Rptr. 3d 341 (2010) (court rejected a claim of unconscionability based
5  on a limitation of only one fact witness deposition and one expert witness deposition because the
6  employee could obtain additional depositions "upon a showing of need."). "The fact that
7  arbitration may limit a party's discovery rights is not 'substantive unconscionability.' If it were,
8  every arbitration clause would be subject to an unconscionability challenge on that ground."
9  *Coast Plaza Doctors Hosp. v. Blue Cross of Cal.,* 83 Cal. App. 4th 677, 689-90, 99 Cal. Rptr. 2d
10  809 (2000).

11  Moreover, at least two courts have found that a provision allowing the arbitrator to grant
12  additional discovery requests lessens the degree, if any, of substantive unconscionability.
13  *Mercuro v. Superior Court*, 96 Cal.App.4th 167, 184 (2002) (court relied on the fact the arbitrator
14  was authorized to increase discovery limits in holding the discovery provisions adequate); *See*
15  *also Abeyrama v. J.P. Morgan Chase Bank*, No. 12-0445, 2012 U.S. Dist. LEXIS 87847, 2012
16  WL 2393063, at *4 (C.D. Cal. June 22, 2012) (limit of 2 depositions and noting that normal
17  limitations on discovery "are generally legal if either party can ask the arbitrator to expand
18  discovery for good cause."). Additionally, at least one court has found that *Fitz* and its progeny
19  are less applicable post the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563
20  U.S. 333, 341 (2011).  *See Lucas v. Hertz Corp*., 2012 U.S. Dist. LEXIS 151762, 2012 WL
21  5199384, at *4 (N.D. Cal. Oct. 21, 2012) (*Concepion*, however, suggests that limitations on
22  arbitral discovery no longer support a finding of substantive unconscionability).  This bolsters this
23  Court's conclusion that the discovery allowed by the arbitration agreement in this case is "more
24  than minimal," *Armendariz*, 24 Cal.4th at 102, and does not render the agreement substantively
25  unconscionable.

26  "Under California law, an agreement is unconscionable only if it is both procedurally and
27  substantively unconscionable." *Id.* at 99.   Plaintiff has not argued that the agreement is
28  substantively unconscionable for any reason other than the discovery limitations. Having found

14

that there is no evidence of procedural unconscionability and that the discovery limitations do not render the agreement substantively unconscionable, the Court finds the arbitration agreement valid and enforceable.

**CONCLUSION**

For the foregoing reasons, it is HEREBY ORDERED that:

1. Defendant's Motion to Compel Arbitration is GRANTED (Doc. 10);

2. The claims alleged by Plaintiff Lori Stover-Davis against Defendant Aetna Life Insurance Company included in the Complaint are submitted to arbitration pursuant to the arbitration agreement included Aetna's Employee Handbook;

3. Defendant shall file a notice of completion with the Court within thirty (30) days of the completion of arbitration;

4. The Court STAYS this action pending the outcome of the arbitration;

5. The INITIAL SCHEDULING CONFERENCE set for June 2, 2016 is VACATED;

6. On or before August 9, 2016, the parties shall file a status report informing the Court of the status of the arbitration proceedings. The parties shall also continue to file a joint status report indicating the outcome and/or status of the underlying action every ninety (90) days after filing the August 9, 2016 status report until the dispute between the parties has been settled or otherwise resolved.

IT IS SO ORDERED.

Dated: **May 12, 2016**                    /s/ *Barbara A. McAuliffe*
                                           UNITED STATES MAGISTRATE JUDGE